# In the United States Court of Federal Claims

| | |
|---|---|
| TRANSUPPORT, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 25-352<br>Filed October 15, 2026 |

Daniel P. Ryan, Sullivan & Worcester, LLP, Boston, MA, for plaintiff.
Alex Schulman, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Dismissing in part for lack of subject-matter jurisdiction over the tax claim and granting the government's motion for summary judgment in part on the breach of contract**

Transupport sued the government seeking a refund of taxes paid in the 2017 tax year based on reported losses it experienced during the 2018 tax year. The government moves for summary judgment, raising two types of arguments, one procedural and the other on the merits. On procedure, the government argues that this court lacks jurisdiction over Transupport's tax refund claim because Transupport did not file a claim for a refund with the IRS after an overpayment and argues that Transupport cannot style its claim as one for breach of contract. On the merits, the government argues that, even if Transupport met its procedural obligations, Transupport loses because its claim relies on a reported loss that does not reflect economic reality. Transupport cross-moves for summary judgment on the merits.

Transupport has not satisfied the jurisdictional prerequisites for filing a tax claim in this court and cannot prove any breach of contract. The court will therefore grant the government's motion, will dismiss the tax claim without prejudice, and will grant summary judgment on the

breach-of-contract claim. The court will not address the government's argument on the merits or Transupport's cross-motion for summary judgment on the merits and will therefore deny Transupport's cross-motion as moot.

## I. Background

Transupport is a global supplier of turbine engine parts. ECF No. 1 at 2 [¶5]. The IRS audited Transupport for tax years 1999 to 2008 and determined that Transupport had undervalued its inventory, resulting in underreporting and underpaying its taxes. *See Transupport, Inc. v. Commissioner of Internal Revenue*, T.C. Memo 2015-179, 2015 WL 5729787, at *7 (2015) ("*Transupport I*"). Transupport challenged the IRS's determination in Tax Court, which issued two decisions, in 2015 and 2016. *Id.*, *supplemented by* T.C. Memo 2016-216, 2016 WL 6900913 (2016) ("*Transupport II*"), *aff'd* 882 F.3d 274 (1st Cir. 2018).

The Tax Court concluded that Transupport had significantly understated its inventory values through a methodology that "consistently led to incorrect results." *Transupport II*, 2016 WL 6900913, at *7. Transupport and the IRS each provided analysis and expert testimony on the extent of Transupport's underpayment. *Id.* at *6. Although the Tax Court expressed skepticism about the IRS's valuation, the court determined that the IRS's valuation "result[ed] in a more reasonable conclusion [than Transupport's valuation] as to the beginning and ending inventories." *Id.* at *13. The Tax Court therefore used the IRS's valuation to calculate Transupport's underpayment liability. *Id.* The IRS, and therefore the Tax Court, estimated that Transupport's ending inventory value for 2008 was $27,674,497. *Id.* That was an order of magnitude more than Transupport's estimate, which was $2,662,956. *Id.* at *6.

Transupport appealed the Tax Court's judgment to the First Circuit, which affirmed in February 2018. *Transupport, Inc. v. Commissioner of Internal Revenue*, 882 F.3d 274, 284 (1st Cir. 2018) ("*Transupport III*").

From 2008 through 2017, Transupport continued to estimate for tax purposes that its inventory was approximately $3 million, never estimating a value below $1.5 million or above $4.5 million. JA58; JA130-47.[1] Transupport filed its first tax return for tax year 2017 in October 2018. JA146-47. Transupport reported its end-of-year inventory value for 2017 as $3,889,412. JA147.

### A. Transupport files a 2018 tax return

In October 2019, Transupport filed its first tax return for tax year 2018. JA148. That return listed Transupport's 2018 beginning-of-year inventory as $28,900,953 (JA149), an order of magnitude larger than its reported end-of-year inventory for 2017 (JA147) and similar to the Tax Court's earlier estimate of Transupport's 2008 inventory value (*Transupport II*, 2016 WL 6900913, at *13). Transupport did not allege that the increase in inventory value was the result of any physical change in the inventory. *See* ECF No. 15-13 at 2. Transupport instead stated that the inventory value changed "as a result of IRS audits." JA152.

Transupport reported its 2018 end-of-year inventory as $2,787,319 (JA149), or back to slightly below its 2017 end-of-year inventory. In its tax return, Transupport stated that it changed its accounting method for the 2018 tax year. JA151. Transupport reported its 2018 taxable income as negative $25,844,408. JA148. According to Transupport, the change in accounting method resulted in an inventory value adjustment of negative $26,222,956. JA152.

### B. The IRS audits Transupport for tax years 2015 to 2017

The IRS then audited Transupport for tax years 2015 to 2017 and again found that Transupport was underpaying its taxes based on undervalued inventories. Transupport protested the IRS's determination, and the parties entered into a settlement agreement before that protest was resolved

[1] The parties filed a joint appendix through ECF. ECF No. 19. The joint appendix includes all of the administrative-record pages cited in this decision. The court will cite the joint appendix with the designation JA.

in the IRS appeals process. *See* JA31-32. The parties memorialized the settlement for tax years 2015 to 2017 on a Form 870-AD, which Transupport and the IRS each signed in August and November 2022, respectively. JA31-32. Under that agreement, Transupport stipulated to an $887,956 deficiency in its taxes for 2017. JA31.

Under the terms of the Form 870-AD, the IRS agreed to not reopen its audit of tax years 2015 to 2017 except in certain circumstances, which included "an excessive tentative allowance of a carryback provided by law." JA32. The agreement also prohibited Transupport from filing or prosecuting a claim for refund or credit for tax years 2015 to 2017, "other than for amounts attributable to carrybacks provided by law." *Id.*

### C. Transupport files amended tax returns for 2017 and 2018

In September 2022, after Transupport signed the Form 870-AD but before the IRS countersigned, Transupport filed an amended 2018 tax return. JA25-30. Transupport calculated that it incurred a $24,293,418 net operating loss for tax year 2018 after accounting for "audit / appeals adjustments." JA25-26.

One month later, Transupport filed an amended return for tax year 2017, seeking to carry back its reported operating losses from the 2018 tax year. JA1-24; ECF No. 8 at 4 [¶19].[2] By carrying back operating losses from its 2018 tax year, Transupport sought to reduce its tax liability for 2017 by $838,189. JA1; ECF No. 8 at 4 [¶19].

In January 2023, the IRS assessed the tax deficiencies connected to the Form 870-AD settlement for tax years 2015 to 2017. JA39.

---

[2] Transupport also filed amended returns for tax years 2015 and 2016. JA44-45; JA46-47. Those tax years will not be discussed further, as they are not relevant to the disposition of the case.

Two months later, the IRS denied Transupport's request to carry back its 2018 net operating loss to the 2017 tax year. JA48-50. The denial letter stated that the IRS was "unable to consider [Transupport's] carryback claim." JA48.

In February 2025, a little over two years after filing its 2017 amended return, Transupport paid the deficiency it owed for the 2017 tax year. ECF No. 8 at 3 [¶12]; ECF No. 20-1 at 3.

### D. Transupport files suit in this court

Transupport sued in this court addressing the 2017 tax year in February 2025, less than two weeks after it paid the deficiency for 2017, seeking a refund of $887,956 it paid in federal income tax for 2017. ECF No. 1. About two months later, Transupport amended its complaint. ECF No 8. Transupport raises two overlapping claims: (1) Transupport argues that the IRS's "failure to abate the assessment of additional tax for taxable year 2017 in the amount of $887,956 was erroneous" under the tax laws; and (2) Transupport alleges breach of contract, arguing that the "IRS's refusal to allow the legal carryback to taxable year 2017 constitutes a breach" of the Form 870-AD agreement. *Id.* at 6-7 [¶¶29-40].

While this suit was pending, the IRS sent Transupport a notice that the IRS had allowed a refund for 2017 and, based on adjustments made to Transupport's 2017 return, Transupport had overpaid its 2017 taxes by $1,330,476.12. JA156 [¶24]. The IRS sent Transupport a letter stating that the IRS's records indicated that taxes for "the tax period shown above [namely, 2017,] are paid in full." ECF No. 16-1 at 43; JA156 [¶26]. But because the matter was already in litigation, the IRS later withdrew its allowance of Transupport's refund. JA156 [¶29].

The government now moves for summary judgment, and Transupport cross-moves. ECF Nos. 15, 16. The court held a hearing on the motions.

## II. Discussion

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with exclusive jurisdiction to decide specific types of monetary claims against the United States. 28 U.S.C. § 1491(a)(1); *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994). The Tucker Act provides this court with jurisdiction to decide "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004). Under 28 U.S.C. § 1346(a)(1), the court's jurisdiction includes a claim for a refund based on an overpayment of taxes. *Id.* ("The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of … [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws"); *see United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) ("A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government … in the United States Court of Federal Claims.").

Under rules 12(b)(1) and 12(h)(3) of the Rules of the Court of Federal Claims (RCFC), the court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." *See also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quotation marks omitted)). "It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) (quotation

marks omitted). Further, a party may challenge jurisdiction "at any stage in litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

Here, the government moved for summary judgment under RCFC 56 but, in the course of that motion, challenged the court's subject-matter jurisdiction. When evaluating the court's subject-matter jurisdiction, the court will "draw all reasonable inferences in the [plaintiff's] favor." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). But the plaintiff still "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). The "factual allegations in the complaint are not controlling[,] and only uncontroverted factual allegations are accepted as true." *Shoshone Indian Tribe of Wind River Reservation, Wyoming v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). That is true when the court is evaluating subject-matter jurisdiction at the motion-to-dismiss stage and later, such as on a motion for judgment on the pleadings (*id.*) or a motion for summary judgment. *See generally Kirkham v. Societe Air France*, 429 F.3d 288, 291 (D.C. Cir. 2005) (treating the defendant's "summary judgment motion as a motion to dismiss and the district court's decision as a denial of a motion to dismiss for lack of subject matter jurisdiction"); *Hakki v. Secretary, Department of Veterans Affairs*, 7 F.4th 1012, 1022-23 (11th Cir. 2021).

Under RCFC 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. Transupport has not satisfied the jurisdictional prerequisites for its tax refund claim

#### 1. Before filing suit in this court, a plaintiff must both send an overpayment to the IRS and file a claim for a refund or credit with the IRS

Under 26 U.S.C. § 1346(a)(1), this court has jurisdiction, concurrent with district courts, over actions "against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." Before a taxpayer can file suit here, though, he (1) must send an overpayment to the IRS and (2) must file a "claim for refund or credit" of the overpayment with the IRS. The first requirement is considered "jurisdictional," and the second is considered "jurisdictional" in some instances.

Those two requirements stem from a series of statutory provisions and decisions from the Supreme Court and Federal Circuit. Transupport argues that the IRS waived the second requirement (requiring a "claim for refund or credit") by treating Transupport's claim as one for a refund—an argument the court will address—but neither party disputes that Transupport must meet both requirements to invoke this court's jurisdiction. Nevertheless, a brief discussion of both requirements is helpful.

##### a. A taxpayer must pay his full tax liability before bringing suit

The first requirement, that the plaintiff must send an overpayment to the IRS, arises from at least four different sources: (a) the Supreme Court's 1958 and 1960 holdings in *Walter W. Flora v. United States*, 357 U.S. 63, 75 (1958) ("*Flora I*"), and *Walter W. Flora v. United States*, 362 U.S. 145, 177 (1960) ("*Flora II*"); (b) this court's overall structure that generally requires a plaintiff to sue for money damages; (c) the logic of 26 U.S.C. § 7422(a), which requires a "claim for refund or credit," implying that there must be money from the taxpayer to be refunded or credited; and (d) the court's lack of jurisdiction over requests for abatement.

In the *Flora* cases, the Supreme Court considered whether a taxpayer must fully pay his tax liability, as assessed by the IRS, before suing for the recovery of overpaid taxes. In *Flora I*, the Supreme Court held that 28 U.S.C. § 1346(a)(1), which gives district courts and this court jurisdiction over refund suits, required taxpayers to "pay first and litigate later." *Flora I*, 357 U.S. at 75. The Supreme Court traced the history of the statute, observing that the precursor to section 1346(a)(1) was understood to "require full payment of an assessed tax as a condition precedent to the right to sue the collector for a refund." *Id.* at 68 (relying on *Cheatham v. United States*, 92 U.S. 85, 89 (1875)). The Supreme Court considered subsequent amendments but determined that none "were intended to alter in any way" the requirement of a full payment prior to filing suit. *Id.* at 75.

Two years later, the Supreme Court, on rehearing in *Flora II*, reaffirmed that section 1346(a)(1) "requires full payment of the assessment before an income refund suit can be maintained in a Federal District Court." *Flora II*, 362 U.S. at 177. The Supreme Court pointed out that three other statutory provisions supported its interpretation. *Id.* at 158.

First, the Supreme Court reasoned that the creation of the Tax Court was intended to "furnish a forum where full payment of the assessment would not be a condition precedent to suit." *Flora II*, 362 U.S. at 163. The creation of an alternative forum indicated that the existing forums could not provide that relief. *See id*.

Second, the Supreme Court pointed out that the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, explicitly exempted disputes "with respect to Federal Taxes." *Flora II*, 362 U.S. at 164. If a taxpayer sued before paying a tax, he would effectively be seeking a declaratory judgment that he did not owe that tax. *See id.* at 165. Thus, the Supreme Court considered the Declaratory Judgment Act's exemption of tax suits as further evidence that a taxpayer must fully pay the tax before filing suit. *Id.*

Third, the Supreme Court relied on 26 U.S.C. § 7422(e), which contemplates a scenario in which the IRS notifies a taxpayer of an additional deficiency concerning tax liability that is already the subject of a suit in district court. *Flora II*, 362 U.S. at 165-67. The Supreme Court observed that not requiring full payment before filing suit may lead to scenarios in which a taxpayer split his cause of action, bringing a suit for refund of part of a tax in district court while simultaneously litigating the unpaid tax liability in Tax Court. *Id.* at 165. But 26 U.S.C. § 7422(e) requires the taxpayer, upon facing an additional, later-assessed liability, to bring suit over that additional liability in either the Tax Court or the district court. It prohibits the taxpayer from splitting his litigation between the two courts. *Id.* at 166. Thus, the Supreme Court reasoned that section 1346(a)(1) could not be interpreted as allowing a plaintiff to sue before paying, because that interpretation would enable the type of split tax actions that Congress sought to avoid in other tax provisions. *Id.* at 166-67.

In sum, in *Flora I* and *Flora II*, the Supreme Court has construed 26 U.S.C. § 1346(a)(1) as requiring a taxpayer to fully pay his assessed tax liability before he may bring suit in this or a district court. That requirement, known as the "full payment rule," is a jurisdictional prerequisite. *Diversified Group Inc. v. United States*, 841 F.3d 975, 979 (Fed. Cir. 2016); *id.* at 981 (noting that section 1346(a) "demands—as a jurisdictional prerequisite—full payment of the tax or penalty before a party could sue for a refund").

Although the full payment rule applies to both district courts and this court, the rule is especially pertinent to this court's unique jurisdiction. This court's jurisdiction requires that the plaintiff's claim be one for money damages, or for relief incidental and collateral to a claim for money damages. *Gonzales & Gonzales Bonds and Insurance Agency, Inc. v. Department of Home-*

*land Security*, 490 F.3d 940, 943 & n.3 (Fed. Cir. 2007). "[T]here is a substantive difference between a plaintiff seeking the return of money it already paid the government and a plaintiff never having to pay the government in the first place." *Id.* at 945. A taxpayer cannot file suit in this court seeking relief from his obligation to pay the government because, if he prevailed, he "would not be receiving monetary damages from the public fisc of the United States." *Id.* (quotation marks omitted). By filing suit without first overpaying his taxes, a taxpayer would be seeking relief from payment, not seeking monetary damages. Thus, this court's unique jurisdiction requires that the taxpayer overpay his taxes before filing suit.

The full payment rule also finds support in the statutory framework for tax refund suits. Under 26 U.S.C. § 7422(a), "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax … until a claim for refund or credit has been duly filed" with the IRS. For a taxpayer to seek a "refund," there must be some money that he first paid to the government and is then seeking to recover. Linguistically, the government cannot *refund* money to a taxpayer if the taxpayer never gave the money to the government in the first place. Other tax law provisions also reflect the implicit requirement that payment be made before a taxpayer can seek a refund. *See, e.g.*, 26 U.S.C. § 6511(a) (providing a time limit for a taxpayer to file a "claim for credit or refund of an *overpayment* of any tax" (emphasis added)); 26 U.S.C. § 511(b)(2)(A) (limiting the amount of credit or refund to the "portion of tax paid within the period, immediately preceding the filing of the claim"). Even 28 U.S.C. § 1346, which gives a broad grant of jurisdiction to this court, only gives this court jurisdiction over civil actions "for the recovery" of taxes. A taxpayer cannot recover money that never left his possession.

A claim for credit is no different. When a taxpayer seeks a credit, as provided under 26 U.S.C. § 7422(a), he is seeking to have an overpayment of one tax liability applied to a different

tax liability. *See* 26 U.S.C. § 7422(d) (a credit assigned to another liability is "deemed to be a payment in respect of such tax liability at the time such credit is allowed"). A claim for credit, therefore, has the same result as if the taxpayer sought a refund and then, once he received the refund, immediately used the refund to pay another tax liability. *See Brazos Electric Power Co-op, Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998) ("Whether this refund is paid directly to Brazos or whether it is credited towards other money Brazos owes to the federal government is irrelevant to our analysis.").

Another statutory provision, found in the Anti-Injunction Act, supports the full payment rule. Section 7421 of the Internal Revenue Code prohibits suits seeking to "restrain[] the assessment or collection of any tax," with limited exceptions. 26 U.S.C. § 7421. As the Supreme Court has acknowledged, "the Anti-Injunction Act's prohibitions impose upon the wronged taxpayer requirements at least as onerous as those mandated by the refund scheme—the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted." *Clintwood Elkhorn*, 553 U.S. at 10; *see also id.* at 13 (noting that 26 U.S.C. § 7422(a) "generally tracks the Anti-Injunction Act"). Thus, even absent the prohibition in 26 U.S.C. § 7422(a), the Anti-Injunction Act requires that a taxpayer pay any contested tax liability before bringing suit.

A pre-payment challenge to the IRS's determination that a taxpayer owes money is effectively a request to reduce assessed taxes, otherwise known as a request for abatement. Several courts, including this one, have held that the Tax Court is the exclusive avenue for seeking judicial review of requests for abatement. *See Carr v. United States*, No. 20-744, 2021 WL 5449072, at *3 (N.D. Cal. Nov. 22, 2021) (collecting cases); *Gluck v. United States*, 84 Fed. Cl. 609, 615-16 (2008) (dismissing request for abatement of taxes for lack of jurisdiction). And although the Supreme Court has not considered whether the Tax Court is the exclusive avenue for seeking judicial

review of abatements generally, it has held that the Tax Court "provides the exclusive forum for judicial review of a refusal to abate interest" under section 6404(e)(1). *Hinck v. United State*, 550 U.S. 501, 503 (2007). Thus, if a taxpayer wishes to file suit in this court after the IRS has disallowed his claim for abatement, his "sole option … is to pay the full amounts claimed due by the IRS, and file a claim for refund with the IRS within two years of payment. If the claim is denied, [the taxpayer] can file suit in this court (or a district court) within two years of denial of the claim." *DiNatale v. United States*, 12 Cl. Ct. 72, 74 (1987); *see Nasharr v. United States*, 105 Fed. Cl. 114, 120 (2012) (explaining that a claim for abatement "does not constitute a claim for refund" and thus does not satisfy the jurisdictional prerequisites for filing a tax suit in this court); *see also* 26 U.S.C. § 6230(c)(5), (a)(3) (setting different deadlines for filing a request for abatement versus a claim for refund).

**b. A taxpayer must file a claim for refund or credit with the IRS before filing suit**

The second requirement, that a plaintiff must file a claim for a refund or credit with the IRS before filing suit here, arises directly from the language of 26 U.S.C. § 7422(a): "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected … until a claim for refund or credit has been duly filed" with the IRS. Two aspects of that requirement are worth discussing. First, the requirement is sometimes considered jurisdictional and sometimes not; whether it is considered jurisdictional turns on whether the taxpayer filed a claim containing defects or whether the taxpayer filed no claim at all. Second, the requirement to file a claim for a refund or credit is akin to a requirement of administrative exhaustion.

A taxpayer must seek a refund from the IRS before suing for a tax refund in this court. "[W]hether sovereign immunity has been waived and the Court of Federal Claims has jurisdiction

over … refund claims depends on whether the taxpayers' submissions to the IRS constitute a claim for refund." *Waltner v. United States*, 679 F.3d 1329, 1333 (Fed. Cir. 2012); *see also Clintwood Elkhorn*, 553 U.S. at 4 (A "claim for refund must be filed with the [IRS] before suit can be brought."). That requirement is jurisdictional. *United States v. Dalm*, 494 U.S. 596, 609-10 (1990).[3] However, the Federal Circuit has distinguished the requirement to file a claim for refund or credit from the adequacy of that filing when determining whether a taxpayer has met jurisdictional prerequisites. *Brown v. United States*, 22 F.4th 1008, 1011 (Fed. Cir. 2022) ("[T]he adequacy of filing … is different than the fact of filing."). While the fact of filing is a jurisdictional requirement, "the 'duly filed' requirement in § 7422(a) is more akin to a claims-processing rule than a jurisdictional requirement." *Id.* at 1012; *see Dixon v. United States*, 67 F.4th 1156, 1161 (Fed. Cir. 2023) ("*Dalm's* jurisdictional characterization applies to the fact of filing in the time allowed, but not to … the adequacy of filing." (quotation marks omitted)).

The requirement to request a refund is akin to a requirement to exhaust administrative remedies. A "party seeking to recover any internal-revenue tax, penalty, or sum from the United States must pursue and exhaust its administrative remedies pursuant to the IRS's regulations prior to filing a complaint in federal court." *Strategic Housing Finance Corp. of Travis County v. United States*, 608 F.3d 1317, 1324 (Fed. Cir. 2010). The exhaustion requirement demands that a taxpayer file a claim for refund or credit with the IRS before bringing suit. *See United States v. Williams*,

[3] The Supreme Court has, in more recent cases, advised that statutory requirements are jurisdictional only if "Congress has clearly stated as much." *United States v. Wong*, 575 U.S. 402, 409 (2015). And it has admonished courts for overreading a prior characterization of something as jurisdictional. *Wilkins v. United States*, 598 U.S. 152, 159-60 (2023). The Federal Circuit has acknowledged the potential tension between those cases and *Dalm* but has declined to decide whether those cases abrogated *Dalm*. *See, e.g., Biestek v. United States*, No. 23-1476, 2025 WL 2985073, at *6-8 (Fed. Cir. Oct. 23, 2025); *Dougherty Electric, Inc. v. United States*, 182 F.4th 963, 970 (Fed. Cir. 2026). Thus, this court will continue to apply *Dalm*.

514 U.S. 527, 533 (1995) ("It is undisputed that § 7422 requires administrative exhaustion."). The refund scheme "is designed to advise the appropriate officials of the demands or claims intended to be asserted, so as to [ensure] an orderly administration of the revenue, to provide that refund claims are made promptly, and to allow the IRS to avoid unnecessary litigation by correcting conceded errors." *Clintwood Elkhorn*, 553 U.S. at 11 (quotation marks omitted). Thus, a claim for refund or credit filed with the IRS must apprise the IRS of the grounds on which a taxpayer may later file suit in this court.

In sum, before a taxpayer can file a claim for refund with the IRS, he must have already paid the tax. Otherwise, "there [is] no tax for [the taxpayer] to claim he was entitled to have refunded." *Martti v. United States*, 121 Fed. Cl. 87, 100 (2015); *see also Arch Engineering Co. v. United States*, 783 F.2d 190, 192 (Fed. Cir. 1986) (noting that "a refund claim was not yet in order" when "deficiency payments had not yet been paid"). Other courts have acknowledged that a taxpayer must make a payment before submitting a claim to the IRS, otherwise the claim cannot be a "claim for refund" as required by 26 U.S.C. § 7422. *See, e.g.*, *Ackerman v. United States*, 643 F. Supp. 2d 140, 146 (D.D.C. 2009) ("[C]ommon sense dictates that a person cannot request a 'refund' when the entity to which she makes her request does not have her money.").

By contrast, when the taxpayer has not yet paid the tax, a request to reduce his tax liability is a claim for abatement. *See Martti*, 121 Fed. Cl. at 99-100; *see also United States v. Factors & Finance Co.*, 288 U.S. 89, 92 (1933) ("A claim for abatement, unlike a claim for refund, has relation to a tax assessed, but still unpaid."); 26 U.S.C. § 6404(a) (connecting abatements to the "*unpaid portion* of the assessment of any tax or liability" (emphasis added)). As discussed, this court does not have jurisdiction over abatement claims.

### 2. Transupport did not file the required claim for a refund or credit with the IRS

This court's jurisdiction over Transupport's tax refund claim thus turns on whether Transupport overpaid its taxes and then filed a claim for a refund. The government argues that Transupport's 2017 amended return was a claim to abate the assessment of additional tax, not a claim for a refund, because at the time Transupport filed the amended return it had not paid its 2017 taxes. ECF No. 15 at 17-18 (citing 26 U.S.C. § 7422(a)). And once Transupport paid its 2017 taxes, according to the government, Transupport's amended return was not converted to a claim for a refund, either automatically or through the IRS's actions. *See* ECF No. 17 at 2. The government further argues that a separate Transupport tax payment of $150,000 does not support this court's jurisdiction because, before Transupport filed its amended return, it had already requested to have that $150,000 payment transferred to a different tax year. *Id.* at 3.

Transupport responds that its timely 2017 amended tax return constitutes a claim for a refund. ECF No. 16 at 41. Transupport states that, when it filed the 2017 amended return, it had paid $150,000 in taxes for 2017. *Id.* Transupport argues that the $150,000 payment constituted "money in IRS's possession" that the 2017 amended return requested back. *Id.* And, even if Transupport's 2017 amended return was not initially a claim for a refund, Transupport argues that the IRS treated the claim as one for a refund, such that the government waived its opportunity to dispute that the amended tax return constituted a request for a refund rather than a request for an abatement. *Id.* at 42.[4]

[4] In its reply brief, Transupport also appeared to invoke the informal claim doctrine. ECF No. 18 at 2. During oral argument, however, Transupport's counsel stated that it is not asking the court to apply the informal claim doctrine. The court therefore will not further address that doctrine.

The government is correct that Transupport's 2017 amended tax return was not a claim for refund or credit. The analysis requires a quick review of the timeline, summarized in the table below.

| **Date** | **Event** |
|---|---|
| April through December 2017 | Transupport makes four estimated tax payments of $37,500 each (JA210), for a total of $150,000 in estimated tax payments. |
| April 2018 | The IRS transfers out a $150,000 credit to be applied toward liability for tax year 2006. JA210. |
| October 2018 | Transupport files its original 2017 return paying $0 in tax and noting that it is requesting that the $150,000 (although already transferred) be "credited to 2018 estimated tax." JA146. |
| September 2022 | Transupport files its 2017 amended return requesting an abatement of $838,189. JA1. |
| February 2023 | The IRS closes examination of Transupport's 2017 amended return. JA210. |
| March 2023 | The IRS rejects Transupport's 2017 amended return. JA48-50. |
| February 18, 2025 | Transupport pays its outstanding tax liability of $1,163,421.64 for 2017. ECF No. 20-1 at 3. |
| February 27, 2025 | Transupport files suit in this court. ECF No. 1. |
| July 24, 2025 | The IRS notifies Transupport that it is applying Transupport's 2018 net operating loss carryback to 2017 and will be refunding Transupport its overpayment, followed by a formal letter. JA185; JA188. |
| July 25, 2025 | The government notifies Transupport that it opposes the IRS's allowance. JA156 [¶¶28-29]. |

As shown in the timeline, Transupport's first set of tax payments, a total of $150,000 initially designed to be credited to 2017 (ECF No. 20-1 at 2), were moved to a different tax year before Transupport ever requested a change to its 2017 tax liability through the amended return. The IRS credited that $150,000 to the 2006 tax year in April 2018. JA210; *see* ECF No. 17 at 3;

ECF No. 20-1 at 2. The IRS has the authority to apply a payment to a different year's tax debt (26 U.S.C. § 6402(a)), which apparently happened here. And, evidently not knowing it had already been transferred, Transupport elected to credit that same money to the 2018 tax year when it filed its original 2017 tax return in October 2018. JA146. "[A] tax for a particular year is not paid by money generally held by the IRS, but rather by money assigned as payment of the tax for that year." *FleetBoston Financial Corp. v. United States*, 483 F.3d 1345, 1350 (Fed. Cir. 2007). That means a "taxpayer could not elect to apply an overpayment to one tax year … and then later ask that the overpayment be applied to offset a tax deficiency for a different year." *Karp v. United States*, 181 Fed. Cl. 647, 652 (2026). Here, the IRS applied the $150,000 payment to another year, and Transupport agreed with applying it to another year before ever filing its amended return for 2017. Thus, that payment cannot serve as the basis for a later refund request for 2017.

Transupport's later payment for tax year 2017, $1,163,421.64, also did not serve as the basis for a refund request. As shown in the timeline above, Transupport filed its amended 2017 return, requesting an abatement, in September 2022. JA1. At that point there was no payment for the IRS to refund. The IRS then closed examination in February 2023 (JA210) and denied the request in March 2023 (JA48-50). Transupport then made the tax payment in February 2025 (ECF No. 20-1 at 3) and immediately filed suit here (ECF No. 1). Although at the time Transupport filed suit it had made a tax payment and could have requested a refund from the IRS, it did not make that request. And even though the IRS later issued a notice stating that it would provide a refund, that was not in response to any open request from Transupport.

That second payment therefore cannot support the court's jurisdiction. The amended return never requested a refund of the second payment because the request contained in the amended return and the second payment were never before the IRS at the same time.

Transupport's failure to make an overpayment before or during the IRS's examination of its claim creates a jurisdictional deficiency because it means Transupport never filed a claim for refund with the IRS. A procedural error, for example a failure to personally sign a form, merely implicates the "adequacy of the filing" and therefore does not strip this court of jurisdiction. *Brown*, 22 F.4th at 1010-11. By contrast, Transupport failed to file a claim for refund or credit at all and therefore failed to satisfy the jurisdictional filing requirement contained in section 7422(a). *Id.* at 1011 (acknowledging that "the filing requirement in § 7422(a) [is] a jurisdictional limitation"); *id.* (distinguishing "the adequacy of the filing" from "the fact of filing").

The fact that Transupport described its request as one for abatement further undermines its argument that it was in fact seeking a refund. In its complaint, Transupport described the IRS's denial of its 2017 amended return as a "failure to *abate* the assessment of additional tax for taxable year 2017." ECF No. 8 at 7 [¶39] (emphasis added). Transupport does not point to anywhere in the record, before filing this suit, that it characterized its 2017 amended return as a claim for a refund. *Cf.* JA2 (Transupport noting that the 2017 return "has been amended to carry back a loss"); JA56 (Transupport's request to the taxpayer advocate describing its claim as a "carryback claim").

The government analogizes this case to *Martti*. ECF No. 15 at 18-20. The government is correct that, in *Martti*, as here, the taxpayer filed an amended tax return and then paid the taxes he owed, and the court held that the plaintiff's claim was not a claim for a refund. *Martti*, 121 Fed. Cl. at 100; *see also Carr*, 2021 WL 5449072, at *4; *Johnson v. United States*, No. 19-156, 2022 WL 1524602, at *4 (E.D. Cal. May 13, 2022); *Dixon v. United States*, 158 Fed. Cl. 69, 74 (2022), *aff'd on other grounds*, 67 F.4th 1156 (Fed. Cir. 2023). The court explained that later payment did not change the fact that the forms "could not have been claims for refund on the date they were filed." *Martti*, 121 Fed. Cl. at 100. And in *Martti*, as here, the plaintiffs asserted that the IRS waived

its argument by treating the claim as one for a refund. *Id.* at 102-03; ECF No. 16 at 42-43. The court rejected that argument. *Martti*, 121 Fed. Cl. at 102-03. But even if the court in *Martti* is incorrect, and a later payment can convert a request for abatement into a request for a refund, the facts here still would not allow Transupport's request for abatement to be converted into a request for a refund because the IRS already decided the request for abatement before Transupport paid the tax.

For the same reason, the IRS could not have waived Transupport's requirement to file the refund request. Transupport argues that the IRS waived any "perceived flaw in Transupport's refund claim" because the IRS "comprehended that Transupport made a refund claim" and "examined that claim." *See* ECF No. 16 at 41-43. Under the waiver doctrine, if a taxpayer files a timely formal claim but fails to comply with certain regulatory requirements, the IRS may waive those requirements by examining the claim as if it were compliant. *See Computervision Corp. v. United States*, 445 F.3d 1355, 1365-67 (Fed. Cir. 2006). The waiver doctrine may apply only when "(1) there is clear evidence that the Commissioner understood the claim that was made, (2) it is unmistakable that the Commissioner dispensed with the formal requirements and examined the claim, and (3) the Commissioner took action upon the claim." *Brown*, 22 F.4th at 1013 (citing *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297-98 (1945)). As explained above, Transupport did not file a claim for refund at all. Thus, Transupport cannot invoke the waiver doctrine because it failed to meet the threshold requirement: Transupport did not file a timely formal claim for refund.

Even if Transupport's failure to make an overpayment before filing its claim were merely a procedural flaw, like that of omitting a required signature, the waiver doctrine would not apply. Here, when the IRS examined Transupport's amended return, the IRS only told Transupport, "We can't process your claim for the tax period listed above." ECF No. 16 at 42; *see* JA48. The IRS

did not mention a *refund* claim, and as already discussed, there was no tax payment that Transupport could have been requesting back at that time. At best, the record shows that the IRS considered Transupport's request to be a "carryback claim." JA48; *see also* JA56. A carryback claim may reduce the taxpayer's tax liability for a specific year, but that reduction may still result in either an abatement of taxes or a tax refund, depending on whether the taxpayer has already paid taxes. *See Factors & Finance*, 288 U.S. at 92 ("A claim for abatement, unlike a claim for refund, has relation to a tax assessed, but still unpaid."). As already discussed, the court's jurisdiction would require the IRS to be considering only a refund request.

Transupport argues that, instead of following *Martti*, the court should follow *Blue v. United States*, 108 Fed. Cl. 61, 69 (2012). For the first time during oral argument, Transupport argued that, under *Blue*, the waiver doctrine applies to claims even if the plaintiff did not make an alleged overpayment before filing a claim. But the court in *Blue* focused on correspondence in which the IRS told the Plaintiff that "your *claim for refund* … has been disallowed." *Id.* Here, the IRS never referred to Transupport's 2017 amended return as a claim for refund. Also, unlike Transupport, the plaintiff in *Blue* had paid the assessed taxes before the IRS denied his appeal. *Id.* at 64. Thus, in *Blue* the IRS knew that the plaintiff was seeking a refund while the IRS's evaluation process was ongoing. By contrast, Transupport did not pay the taxes at issue here until nearly two years after the IRS had already denied the request contained in Transupport's 2017 amended return. JA48-50; ECF No. 20-1 at 3. Thus, the facts here are not comparable to the facts in *Blue*, and that case does not give the court jurisdiction here.

In sum, Transupport's 2017 amended tax return cannot constitute a claim for a refund. After Transupport paid its second payment for tax year 2017, it never filed a claim for a refund with the IRS, as required to invoke this court's jurisdiction. *See Waltner*, 679 F.3d at 1333. And

because Transupport did not file a claim for a refund with the IRS, it likewise failed to exhaust its administrative remedies prior to filing suit. *Williams*, 514 U.S. at 533. This court therefore does not have jurisdiction over Transupport's tax refund claim.

**B. Even if the Form 870-AD constitutes a contract, the government did not breach that contract**

Transupport alleges, in the alternative, that the IRS breached the terms of the Form 870-AD that memorialized the settlement of the IRS's audit of Transupport's tax years 2015 to 2017, giving this court jurisdiction over its suit as a breach-of-contract suit. Under that Form 870-AD, Transupport was prohibited from filing or prosecuting a claim for refund or credit for tax years 2015 to 2017, except "for amounts attributed to carrybacks provided by law." ECF No. 16 at 39. Transupport argues that because its 2017 amended return claim was attributed to a carryback provided by law, the IRS's refusing to allow the carryback to 2017 "breached the terms of the Form 870-AD." *Id.*; *see also* ECF No. 8 at 7 [¶34-35].

To establish a breach of contract, a plaintiff must show "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage District v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

Even if the Form 870-AD can be considered a contract, which the government disputes (ECF No. 15 at 15), Transupport has not demonstrated that the IRS breached that contract. Under the Form 870-AD, the IRS promised not to reopen its audit of tax years 2015 to 2017, except in specified circumstances. JA31-32. The form prohibited Transupport from filing or prosecuting a claim for refund or credit for tax years 2015 to 2017, except "for amounts attributable to carrybacks provided by law." JA32. But the form did not require the IRS to allow, or even consider, any claim for refund, credit, or carryback that Transupport may file for tax years 2015 to 2017. Because the

only duty that Form 870-AD arguably imposed on the IRS with respect to tax years 2015 to 2017 is one to not reopen its audit of those tax years, the IRS could only breach the terms of the Form 870-AD by reopening its audit of those years. Transupport does not allege that the IRS has done that. In fact, Transupport accuses the IRS of refusing to reopen its determination on tax year 2017. ECF No. 16 at 39-40 (faulting the IRS for not applying a carryback to tax year 2017); ECF No. 1 at 6 [¶34] (same). Thus, even if the Form 870-AD constitutes a contract, Transupport has failed to show that the IRS breached the terms of that contract. The government is entitled to summary judgment on Transupport's breach-of-contract claim, and that claim thus cannot provide an alternative avenue to this court's review.

* * *

In sum, the court lacks jurisdiction over Transupport's claim when characterized as a tax claim because Transupport never requested a refund from the IRS. And when characterized as a contract claim, there is no basis for Transupport's allegation that the government breached any contract.

The government also challenges the merits of Transupport's tax claim. But once "the court determines … that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3); *see also Steel Co.*, 523 U.S. at 94.

Transupport argued at the oral argument that it is inefficient for the court to dismiss this case now, after the parties have already briefed and argued the merits on summary judgment, only for Transupport to potentially file a refund claim with the IRS, refile its suit here in a few months, and start all over. The court is sympathetic to Transupport's desire to avoid that inefficient result. But, as explained above, the court has determined that it lacks jurisdiction over Transupport's tax

claim. The court must dismiss that claim even though dismissal results in inefficiency. *See Steel Co.*, 523 U.S. at 94.

## III. Conclusion

For the reasons stated above, this court **dismisses** Transupport's tax refund claim without prejudice for lack of jurisdiction and **grants** the government's motion for summary judgment (ECF No. 15) as to the breach-of-contract claim because there is no basis for Transupport's allegation that the government breached any contract. The court **denies** Transupport's cross-motion for summary judgment (ECF No. 16) as moot. This is a final, appealable order. The clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge